**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

THOMAS DWIGHT CLINE,

     Plaintiff,

v.                                                              CIVIL ACTION NO. 2:20-cv-00182

ANDREW SAUL,
Commissioner of Social Security,

     Defendant.

**<u>PROPOSED FINDINGS & RECOMMENDATION</u>**

Plaintiff Thomas Dwight Cline ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–33, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83f. (ECF No. 2.) By standing order entered on January 4, 2016, and filed in this case on March 16, 2020, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3.) Presently pending before this Court are Claimant's Memorandum in Support of Plaintiff's Motion for Judgement on the Pleadings (ECF No. 16) and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 17).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT**

Claimant's request to reverse the Commissioner's decision (ECF No. 16), **DENY** the Commissioner's request to affirm his decision (ECF No. 17), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter for further proceedings.

## I.    BACKGROUND

### A. Information about Claimant and Procedural History of Claim

Claimant was 48 years old at the time of his alleged disability onset date and 52 years old on the date of the decision by the Administrative Law Judge ("ALJ"). (*See* Tr. at 209, 211.)[1] He completed the seventh grade. (*Id.* at 231.) Most recently, he worked as a heavy equipment operator for a coal company, and he has also been employed at a logging company. (*Id.* at 555.) Claimant alleges that he became disabled on January 1, 2015, due to "Neck and back injury," gout, "heart problems," high blood pressure, high cholesterol, diabetes, and arthritis. (*Id.* at 230.)

Claimant protectively filed his applications for benefits on February 3, 2016. (*Id.* at 15, 209–17.) His claims were initially denied on December 29, 2016, and again upon reconsideration on May 2, 2017. (*Id.* at 124–29, 134–47.) Thereafter, on June 27, 2017, Claimant filed a written request for hearing. (*Id.* at 148–49.) An administrative hearing was held before an ALJ on November 5, 2018, in Logan, West Virginia, with the ALJ appearing from Tampa, Florida. (*Id.* at 32–61.) On January 17, 2019, the ALJ rendered an unfavorable decision. (*Id.* at 12–31.) Claimant then sought review of the ALJ's decision by the Appeals Council on January 23, 2019. (*Id.* at 205–08.) The Appeals Council denied Claimant's request for review on January 14, 2020, and the ALJ's decision became the final decision of the Commissioner on that date. (*Id.* at 1–6.)

---

[1] All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF Nos. 12 and 13.

Claimant timely brought the present action on March 13, 2020, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2.) The Commissioner filed an Answer (ECF No. 11) and a transcript of the administrative proceedings (ECF Nos. 12, 13). Claimant subsequently filed his Memorandum in Support of Plaintiff's Motion for Judgement on the Pleadings (ECF No. 16), and in response, the Commissioner filed his Brief in Support of Defendant's Decision (ECF No. 17). As such, this matter is fully briefed and ready for resolution.

B. *Relevant Evidence*

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and summarizes it here for the convenience of the United States District Judge.

1. *Evidence Related to Claimant's Illiteracy and Education*

When completing a "Disability Report – Adult" form in connection with his applications for benefits on March 16, 2016, Claimant stated that he was able to read and understand English and write more than his name in English. (Tr. at 229.) He also stated that he had completed the seventh grade. (*Id.* at 231.) Claimant's aunt completed a "Function Report – Adult" form for him several weeks later. (*Id.* at 252.) In response to a question on that form about how well he followed written instructions, Claimant answered that he could "follow a recipe but not putting things together." (*Id.* at 250.) He elaborated, "someone has to read the directions to me." (*Id.*) Claimant's aunt also helped him complete a "Personal Pain Questionnaire" form, and Claimant represented on that form, "I can't read or write that's why someone helped fill the papers out." (*Id.* at 261.)

At his consultative medical examination on July 28, 2016, Claimant reported to the consultative examiner that he completed the seventh grade. (*Id.* at 448.)

3

Claimant's aunt completed another "Function Report – Adult" form for him on September 30, 2016.  (*Id.* at 269.)  On that form, Claimant stated that he is unable to pay bills or use a checkbook and money orders because he doesn't "know how to spell good enough to fill them out and keep track of it all."  (*Id.* at 265.)  When asked the same question about how well he could follow written instructions, this time Claimant answered, "I can't read good enough to follow them."  (*Id.* at 267.)  He also stated, "I can't read good so my mom fix's [sic] my pills in a container."  (*Id.* at 269.)

Claimant underwent a consultative psychological examination on October 25, 2016.  (*Id.* at 553.)  When reciting Claimant's educational history, the consultative examiner noted, "he completed the 12th grade at Gilbert Junior High School."  (*Id.* at 554.)[2]  She also noted that he "did not receive special education services," but "He was retained twice repeating the 1st and 7th grades."  (*Id.*)  She stated, "He was an average to below average student."  (*Id.*)  The consultative examiner continued, "Regarding his current ability to read and write, [Claimant] reported 'I did pretty good in math, but the reading and all that other stuff I just didn't get.'"  (*Id.*)  Claimant told her that he could manage his finances.  (*Id.* at 555.)

At Claimant's second consultative medical examination on December 9, 2016, he reported to the consultative examiner that he completed the seventh grade.  (*Id.* at 571.)

On March 4, 2017, Claimant's aunt completed a third "Function Report – Adult" form on his behalf.  (*Id.* at 290.)  Claimant again represented that he was unable to pay his bills and stated that his mother does it for him.  (*Id.* at 286.)  He also stated, "I do believe I have a learning disability I never did well in school."  (*Id.* at 288.)  Claimant

---

[2] The parties appear to agree that the consultative examiner's suggestion that Claimant graduated high school is a misstatement and that he completed only the seventh grade.  (*See* Tr. at 37; ECF No. 17 at 7.)

remarked that he "can follow a simple recipe but someone has to read it for [him]."  (*Id.*)
He further represented that his mother "puts [his] pills in a container because [he] can't
read to do them good enough."  (*Id.* at 290.)

### 2.  Hearing Testimony

Claimant testified at the administrative hearing that he cannot read and write and
that his mother and his aunt helped him with "paperwork."  (*Id.* at 38.)

Later in the proceeding, after a vocational expert ("VE") had identified
representative jobs in response to a hypothetical from the ALJ, the ALJ asked her to
imagine a hypothetical individual who, in addition to the limitations the ALJ had
previously identified, "would be capable of following simple instructions and instructions
that are more detailed than two steps would need to be verbal instructions not written."
(*Id.* at 58.)  The VE testified that the additional limitation "would not have any impact on
the jobs [she] identified" because "Unskilled jobs generally provide verbal instructions.
Generally, they're not required to read."  (*Id.*)

### C.  Sequential Evaluation Process

An individual unable "to engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can be expected to result in
death or which has lasted or can be expected to last for a continuous period of not less
than 12 months" is considered to be disabled and thus eligible for benefits.  42 U.S.C.
§ 423(d)(1)(A). The Social Security Administration has established a five-step sequential
evaluation process to aid in this determination.   20 C.F.R. §§ 404.1520(a)(4),
416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017).  The ALJ proceeds
through each step until making a finding of either "disabled" or "not disabled"; if no
finding is made, the analysis advances to the next step.  20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4).  "The ultimate burden to prove disability lies on the claimant."  *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985); *see Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments.  *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The ALJ gleans this information from the available medical evidence.  *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001).  An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled."  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'"  *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

6

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]." 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20

C.F.R. §§ 404.1520a(b), 416.920a(b); *see id*. §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d), 416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a [VE] responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id.*

Applying the sequential evaluation process in this case, the ALJ concluded that Claimant satisfied the insured status requirements and was insured through the date of the decision. (Tr. at 17.) She further determined that Claimant had not engaged in

substantial gainful activity since the alleged onset of his disability.  (*Id*.)  She found that Claimant's "back disorder; cervical spine disorder; gout; coronary artery disease, status post coronary bypass grafting x 5, performed in June 2016, with residual chronic chest pain; diabetes mellitus, type 2, with peripheral neuropathy; arthritis of the knees; hearing loss (left side); and obesity, with a BMI in the mid-to-low-30's" constituted "severe" impairments.  (*Id*. at 18–19.)   However, she found that those impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id*. at 19–20.)  Upon assessing Claimant's RFC, the ALJ determined that Claimant is able "to perform light work . . . except [he] can occasionally climb ramps and stairs, but he can never climb ladders, ropes or scaffolds" and "[h]e can occasionally balance, stoop, kneel, crouch, and crawl."  (*Id*. at 20.)  She further found that Claimant "needs to avoid frequent exposure to extreme cold, heat, wetness, humidity, and pulmonary irritants, such as fumes, odors, dust, gases, and poor ventilation" and that he "needs to avoid workplace hazards, such as moving machinery and unprotected heights."  (*Id*.)  In addition, she determined that Claimant "should also avoid exposure to work environments with excessive noise, defined as one with the constant sound of heavy traffic or heavy machinery that would be consistent with a noise intensity level of four, as defined in the <u>Selected Characteristics of Occupations</u>."  (*Id*.)

The ALJ concluded that given the limitations imposed by Claimant's RFC, he was unable to perform his past relevant work.  (*Id*. at 24–25.)  She noted that Claimant is "closely approaching advanced age" with "a limited education" and that "[t]ransferability of job skills [was] not material to the determination of disability."  (*Id*. at 25.)  Because the ALJ determined that Claimant was unable to perform the full range of light work, she enlisted a VE to aid in her finding that Claimant is capable of working as a price marker,

sorter/inspector, or cleaner.  (*Id.* at 25–26.)  As a result, the ALJ concluded that Claimant was not "under a disability . . . from January 1, 2015, through the date of this decision." (*Id.* at 26.)

## II.    LEGAL STANDARD

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations."  *Id.* (alteration omitted).  "[T]he threshold for such evidentiary sufficiency is not high."  *Id.* "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]."  *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).  Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence.  *Id.* (quoting *Craig*, 76 F.3d at 589).

## III.    ANALYSIS

Claimant argues that the ALJ erroneously failed to address in her RFC assessment how his illiteracy affects his ability to work and suggests that she should have referred him for testing of his "reading and mathematical skills."  (ECF No. 16 at 8–11.)  He asks

10

this Court to reverse the Commissioner's decision and remand this matter to the ALJ. (*Id.* at 12.) The Commissioner responds that Claimant's level of literacy corresponds not to his RFC but instead his education at step five of the sequential evaluation process. (ECF No. 17 at 6.) He contends that the ALJ reasonably concluded that Claimant had a "limited education" because the record evidence supports a finding that Claimant is not completely illiterate. (*Id.* at 6–9.)

As an initial matter, the Commissioner correctly notes that "[i]lliteracy . . . is considered a vocational factor, and thus, does not appropriately belong in the RFC [assessment]." *Odoms v. Colvin*, 194 F. Supp. 3d 415, 425 (W.D.N.C. 2016) (citing 20 C.F.R. § 416.964(b)(1)); *Antonio C. v. Comm'r of Soc. Sec.*, No. 4:17-cv-00053, 2019 WL 9075880, at *7 (W.D. Va. Feb. 7, 2019) ("Illiteracy 'is a vocational factor that is considered when determining whether there are jobs in the national economy that a claimant can perform.'" (quoting *Joines v. Colvin*, No. 3:14-cv-396, 2015 WL 1249579, at *7 (W.D.N.C. Mar. 18, 2015))). Rather, illiteracy is one of four categories the ALJ uses to "evaluate [a claimant's] educational level" at the fifth step of the sequential evaluation process. 20 C.F.R. §§ 404.1564(b), 416.964(b); *James P. v. Saul*, No. CBD-18-cv-1486, 2019 WL 3892330, at *6 (D. Md. Aug. 19, 2019) ("Determining a claimant's literacy is essential to step five of the sequential evaluation process because 'it dictates which Rule Grid [the ALJ] will apply as a basis for deciding whether a claimant is disabled.'" (quoting *Shoulars v. Astrue*, 671 F. Supp. 2d 801, 805 (E.D.N.C. 2009))).

In conjunction with the step-five finding, the ALJ must categorize Claimant's educational level as illiteracy, marginal education, limited education, or high school education and above. 20 C.F.R. §§ 404.1564(b), 416.964(b). A claimant is "consider[ed] . . . illiterate if [he] cannot read or write a simple message such as instructions or

11

inventory lists even though [he] can sign his . . . name." *Id.* §§ 404.1564(b)(1), 416.964(b)(1). "Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs." *Id.* §§ 404.1564(b)(2), 416.964(b)(2). "Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." *Id.* §§ 404.1564(b)(3), 416.964(b)(3).

Each of the categories also corresponds with a range of formal education: illiteracy is equivalent to "little or no formal schooling," marginal education is associated with formal schooling up to the sixth grade, and limited education is the equivalent of a seventh- through eleventh-grade formal education. *Id.* §§ 404.1564(b), 416.964(b). Generally, "if there is no other evidence to contradict it, [the ALJ] will use [the claimant's] numerical grade level to determine [his] educational abilities." *Id.* The ALJ in this case appears to have relied solely on Claimant's seventh-grade education to conclude that he "has a limited education," as it is the only evidence she cited in her discussion. (Tr. at 25.)

But as even the Commissioner seemingly acknowledges (ECF No. 17 at 7–8), the administrative record contains evidence that is inconsistent with a limited education level—most glaringly, the assertion that Claimant's aunt completed his "Personal Pain Questionnaire" form because he "can't read or write" (Tr. at 261). The ALJ was entitled to determine that Claimant was not illiterate; however, given the contradictory evidence in the record about his educational abilities, she should have explained her reasons for finding that those abilities are consistent with his formal schooling, as contemplated by the applicable regulations. *See Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) ("The record should include a discussion of which evidence the ALJ found credible and why,

and specific application of the pertinent legal requirements to the record evidence."
(citing *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989))).  Although the Commissioner
may be correct that the ALJ reasonably concluded that Claimant has a limited education,
he improperly encourages this Court "to hypothesize the ALJ's justifications that would
perhaps find support in the record."  *Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015)
(per curiam).  It is the ALJ's duty to resolve the conflicts in the evidence about Claimant's
educational abilities in the first instance.  *See Radford*, 734 F.3d at 296.  The undersigned
**FINDS** that her failure to do so was error.  On remand, the ALJ may consider whether
the "referral for testing to assess [Claimant's] reading and mathematical skills" that
Claimant suggests is necessary.  (ECF No. 16 at 11.)

## IV.    CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the
presiding District Judge **GRANT** Claimant's request to reverse the Commissioner's
decision (ECF No. 16), **DENY** the Commissioner's request to affirm his decision (ECF No.
17), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter for
further proceedings.

The parties are notified that this Proposed Findings and Recommendation is
hereby **FILED** and a copy will be submitted to the Honorable Irene C. Berger, United
States District Judge.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal
Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of
the filing of this Proposed Findings and Recommendation to file with the Clerk of this
Court specific written objections identifying the portions of the Proposed Findings and
Recommendation to which objection is made and the basis of such objection.  Extension

of this time period may be granted for good cause shown.  Copies of any objections shall be served on opposing parties and provided to Judge Berger.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals.  28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER: January 13, 2021

Dwane L. Tinsley
United States Magistrate Judge